591 A.2d 1339

IN THE MATTER OF ROBERT B. BLACKMAN, JUDGE OF THE
EDISON MUNICIPAL COURT.

Argued March 26, 1991—Decided July 12, 1991.

*Patrick J. Monahan, Jr.,* Counsel, argued the cause for Advisory Committee on Judicial Conduct.

*Robert J. Lecky* argued the cause for respondent (*Stamberger & Lecky,* attorneys; *Jeffrey Zajac,* on the brief).

PER CURIAM.

This is a disciplinary case that involves a judge of the municipal court. On September 10, 1990, a resident of Edison Township forwarded a letter of complaint to the Advisory Committee on Judicial Conduct (ACJC) with regard to several instances of conduct by respondent, Robert Blackman, a judge of the Municipal Court of that community. On October 17, 1990, the ACJC informed respondent that the matter would be discussed by the ACJC in an informal conference.

On November 14, 1990, the ACJC held an informal conference with respondent and his attorney to review the allegations. These referred to respondent's attendance at a social event hosted by a person recently convicted of a crime, and the representation by respondent's law partner of the Edison Chief of Police, a former client of respondent, in a private real estate matter. Following this conference, the ACJC, in a letter dated January 29, 1991, set forth its findings of fact and conclusions, namely, that the conduct of respondent violated the standards governing judicial conduct and warranted a private reprimand.

On February 27, 1991, this Court, on its own motion, issued an order to show cause requiring respondent to show why a public reprimand or other discipline should not be imposed based on the conduct that had been the subject of the ACJC proceedings. The parties do not suggest that the informality of the hearing below renders the record unreliable for purposes of this Court's disciplinary determination. The Court has received briefs and heard oral argument. Based on our independent review of the record, we concur in the ACJC's determinations that respondent violated the standards of judicial conduct in both instances. However, we modify its recommendations with respect to appropriate discipline.

I.

In May 1990, Thomas Robert Heroy, former purchasing agent for Edison Township, entered a guilty plea to federal

racketeering charges. He received a two-and-one-half year prison term. His sentence was scheduled to begin on September 4, 1990. On September 2, 1990, respondent attended an annual Labor Day picnic at Heroy's mother's home in Edison. Heroy and respondent had been close friends for eighteen years and respondent had attended Heroy's and his mother's Labor Day picnics for "many years." Although respondent characterized the picnic as "an entirely private affair," it was attended by approximately 150 to 200 people, including several attorneys, officials from various municipalities, one chief of police, and a former senior officer of the New Jersey State Police. The party, and respondent's attendance, were widely publicized in local papers.

Respondent explained his decision to attend this party as follows:

I said that Mr. Heroy's been my friend for 18 years. Mr. Heroy did something wrong. He admitted his wrongdoing and he's paying the price, the price being his freedom. That [neither] ... make[s] him ... a leper nor does it make him a [pariah], it makes him a man who made a mistake. If you know the man, you would understand that there are extraordinarily good qualities in the man also. He was my friend, I went to a backyard picnic, I do not [consort] with criminals, I don't ... I don't condone what he did, I am stunned by what he did. I could not believe that this man of this character that I've known could do such a thing as to take bribes but that doesn't totally turn in my mind the good qualities in the man.

There was no celebration of his going to jail, that's totally misconstrued and misquoted in the papers that this was a celebration for him going to jail. If anything, it was a wake in that sense.

The ACJC disagreed with respondent's assessment of the event:

What you overlooked, and what we tried to emphasize to you at the hearing was that you created an appearance of impropriety by attending an event that was hosted by a convicted felon.

\*    \*    \*    \*    \*    \*    \*    \*

Your initial responses to our questions at the informal conference raised considerable doubt that, even after the negative publicity surrounding your attendance at the barbecue, you did not yet understand the limitations the judicial office imposes on your social activities. There is still serious doubt within the Committee whether you recognize that your mistake was in attending the barbecue or whether you merely regret that the press reported your

attendance. We have decided to give you the benefit of the doubt. We hope that you now fully understand that you were guilty of a serious lapse in judgment in attending the barbecue and that the presence of the press only worsened your mistake.

*Canon* 2 of the *Code of Judicial Conduct* requires judges to avoid impropriety and the appearance of impropriety in all activities. The commentary to that *Canon* notes:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety, and must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on personal conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

The *Canon* makes clear that judges have responsibilities with regard to their personal conduct that greatly exceed those of ordinary citizens. The *Canon* specifically points out that judges must accept restrictions of their personal activities that other citizens might find burdensome and intrusive. The understanding of the *Canon* is that judges have a special responsibility because they are "the subject of constant public scrutiny;" everything judges do can reflect on their judicial office. When judges engage in private conduct that is irresponsible or improper, or can be perceived as involving poor judgment or dubious values, "[p]ublic confidence in the judiciary is eroded."

█ Improper conduct includes creating or acquiescing in any appearance of impropriety. When a judge chooses to attend a party hosted by a convicted criminal, there may be wholly innocuous reasons explaining such a decision. However, the judge must realize that members of the public cannot know the judge's subjective motives and may put a very different cast on his or her behavior. Such conduct could be perceived as evidencing sympathy for the convicted individual or disagreement with the criminal justice system that brought about the conviction. At worst, such conduct may raise questions concerning the judge's allegiance to the judicial system. Those impressions could generate legitimate concern about the judge's attitude toward judicial responsibilities, weakening confidence in the judge and the judiciary.

Respondent described his attendance at the picnic as an innocent mistake. He explained that he had no improper motive, and offered in mitigation that he and Heroy had been close friends for many years. We have no reason to doubt respondent's sincerity and are satisfied that he acted with no improper motive. However, respondent's motivation is not at issue; his conduct is. His presence at the party was the subject of public scrutiny, not his feelings of friendship for Heroy.

Last year, this Court publicly reprimanded two judges for attending the Governor's Inaugural Ball. The Court concluded that the affair in question was a political function and "that both Judges knew or should have known that their attendance had the strong potential of creating an appearance of judges' involvement in politics." 125 *N.J.L.J.* 243 (February 1, 1990). The Court went on to say:

> The issue is not whether a reasonable person would probably conclude the judge had become vulnerable to political influence, but whether there is a fair possibility that some portion of the public might become concerned on that score. And, as in many other instances concerning the conduct of judges, the appearances count as much as the facts. [*Ibid.*]

The lesson is that a judge who attends a public or social event will be perceived as endorsing or supporting not only the event itself but also persons associated with the event. Heroy's party was a widely attended and publicized affair. Because of Heroy's involvement in local government it likely had the appearance of a political as well as a social event, or at least might have been so regarded by others. Thus, when respondent attended Heroy's party, there was "a fair possibility that some portion of the public might become concerned" that respondent disagreed with Heroy's conviction or minimized its significance. That possibility was indeed borne out. Subsequent newspaper accounts interpreted respondent's attendance as support for Heroy, and characterized the event as a going-away party for Heroy as he was about to begin his prison term. It does not matter whether that interpretation was reasonable or whether it might have been at odds with respondent's true

motives. As a judge, respondent had a duty to foresee that his actions might be open to criticism by the press or members of the public. Even if such criticism might be a misinterpretation of his motives, respondent nonetheless had an obligation to avoid any conduct that might lead to such criticism.

In *In re Mattera*, 34 *N.J.* 259, 275, 168 *A.*2d 38 (1961), this Court noted that most citizens have their sole exposure to the judicial process in municipal courts: "The respect they have for the judiciary hinges upon that experience. Thus the magistrate has a unique responsibility for the popular image of the entire system." Respondent's presence at Heroy's picnic not only was observed by many but also was reported in the press. By putting his personal feelings ahead of his responsibility as a judge and attending the party, respondent conducted himself improperly and exhibited insensitivity and poor judgment. He conveyed the wrong image of the judiciary and should be publicly reprimanded.

## II.

The second aspect of respondent's conduct that is before the Court involves the representation by his law partner of the Edison Chief of Police in a private matter, assertedly in violation of *Rules* 1:15–1(b) and 1:15–4. *Rule* 1:15–1(b) provides, in part, that a judge or acting judge of a municipal court shall not "act as attorney for the municipality or any of the municipalities wherein he is serving or as attorney for any agency or officer thereof." *Rule* 1:15–4 extends that limitation on practice to the partners or office associates of a municipal court judge.

On October 26, 1984, prior to becoming the judge of the Edison Township Municipal Court, respondent represented Richard Kermes and Iris Kermes in the purchase of a single-family house on Traci Lane in Edison. Richard Kermes is the Chief of Police of the Township of Edison. On November 16, 1989, after respondent's appointment as Municipal Court Judge,

his partner in private practice, Patrick Foley, represented Richard and Iris Kermes in their sale of the Traci Lane property. These transactions were not related to Richard Kermes' employment as the Chief of Police of Edison Township.

In its private reprimand to respondent, a majority of the ACJC determined that representation of Kermes by respondent's law partner while respondent sat as a municipal court judge violated *Rule* 1:15. A minority of the ACJC disagreed and contended that the bar in *Rule* 1:15-1(b) against representation of an "officer" of a municipality refers only to representation of such officers in their official capacity. However, the *Rule* by its plain terms prohibits a municipal court judge from acting as attorney "for any ... officer" of the municipality. It does not qualify or limit the terms of the prohibition. We agree with the construction placed on the *Rule* by the majority of the ACJC, *i.e.*, that it prohibits *all* representation of a municipal officer by the judge, even representation involving private transactions unrelated to official duties. That prohibition applies equally to the law partners of the judge.

In general, rules governing judicial conduct are broadly construed, in keeping with their purpose of maintaining public confidence in the judicial system. *See, e.g., In re Di Sabato*, 76 *N.J.* 46, 385 *A.*2d 234 (1978) (municipal court judge censured for representing his son in connection with a traffic violation; *Rule* 1:15 construed broadly to encompass even unpaid representation of an immediate relative). There is good reason to support such a broad construction of *Rule* 1:15, especially where, as here, the municipal official in question is a Chief of Police. Thus, "this Court has instructed all municipal courts that 'no municipal court employee or other employee assigned to serve a municipal court may have any connection with the police department.' *Municipal Court Bulletin Letter No. 68*, p. 2, September 29, 1961." *State v. Ruotolo*, 52 *N.J.* 508, 512-13, 247 *A.*2d 1 (1988). The vast majority of contested cases that come before any municipal court judge are those in which the complaining

witness is a police officer. When such a case comes on for trial, the judge's obligation is to weigh the evidence impartially without giving undue deference to the testimony of the complaining police officer. Although municipal court judges live up to that obligation as a rule, some unsuccessful defendants nevertheless leave the courtroom with the impression that the judge favors the police, especially if the case turns on the credibility of the witnesses. A judge should not only be fair and impartial but should also appear to be fair and impartial. At the very minimum, a judge should never contribute in any way to an impression of favoring the police.

The chief of police of any municipality is the senior officer and the head of the police department. The police officers who testify in a municipal court are under the chief's command. When a municipal court judge's law firm represents the local chief of police as a private client, a citizen might infer that the judge may give special consideration to a local police officer who is a witness before the judge. New Jersey's municipal courts are not police courts, and a judge should do nothing that might foster the erroneous impression that they are.

Further, such an attorney-client relationship between the municipal court judge and the chief of police can constitute an actual impropriety because the representation creates a conflict of interest for the municipal court judge. Under *Canon* 3 C(1)(a) of the *Code of Judicial Conduct,* a judge who represents the chief of police would have to disqualify himself or herself from a case in which the chief were a party or witness because of an imputed personal bias in favor of the chief arising out of the representation. Arguably, the requirement for disqualification could extend to cases involving subordinate police officers.

However, as reflected in the view of the minority of the ACJC members in this case, prior to our present interpretation, it may have been reasonable to construe *Rule* 1:15–1(b) as prohibiting a municipal court judge from representing munici-

pal officers only in their official capacity or in matters involving the discharge of their official responsibilities. Moreover, it is not entirely clear what municipal employees would constitute "municipal officials" whose representation by a municipal court judge would come within the purview of the Rule. Thus, the respondent may have had a good-faith belief that the representation by his law partner of the Chief of Police in a private transaction, did not violate *Rule* 1:15. Although we now determine that such representation violates the *Rule*, we do not believe respondent's conduct warrants discipline, because the *Rule* may have been open to varying constructions prior to our decision today. We are satisfied that our determination in this case should be given prospective effect only. Further, the scope and meaning of the *Rule* should be considered and clarified by the Supreme Court's Committee on the Civil Rules of Procedure.

## II.

We find that respondent's attendance at a widely-attended social event hosted by a convicted felon merits a public reprimand. However, the representation of the Edison Police Chief by respondent's law partner in a private transaction, while a violation of *Rule* 1:15, does not warrant discipline by this Court because of the uncertainty of the *Rule*'s meaning and application prior to this opinion.

So ordered.

*For public remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.

## ORDER

The Court having on its own motion issued an order to show cause requiring JUDGE ROBERT B. BLACKMAN to show

cause why he should not be publicly reprimanded or otherwise disciplined, and the Court having considered the record in the matter and the arguments of counsel, and good cause appearing;

It is ORDERED that JUDGE ROBERT B. BLACKMAN is hereby publicly reprimanded for violation of *Canon* 2 of the *Code of Judicial Conduct;* and it is further

ORDERED that the charge of violation of *Rule* 1:15 is hereby dismissed.