614 So.2d 387 (1993)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
William B. GUNN, Justice Court Judge.
No. 92-CC-582.
Supreme Court of Mississippi.
February 11, 1993.
Luther T. Brantley, III, Jackson, for petitioner.
Lawrence Primeaux, Goldman & Primeaux, Meridian, for respondent.
*388 En Banc.
PITTMAN, Justice for the Court:
This proceeding comes to this Court pursuant to findings by the Mississippi Commission on Judicial Performance recommending that William B. Gunn, a justice court judge in Lauderdale County, be issued a public reprimand and a $400 fine. The Commission found William Gunn's conduct to constitute willful misconduct in office as well as conduct prejudicial to the administration of justice. This recommendation is now before this Court for review pursuant to Rule 10 of the Rules of the Mississippi Commission on Judicial Performance. Having considered this matter, we hereby affirm the Commission's recommendation of a public reprimand and $400 fine.

I.
On May 15, 1991, the Mississippi Commission on Judicial Performance ("Commission") filed a formal complaint against William B. Gunn, Justice Court Judge in Lauderdale County, Mississippi, charging him with judicial misconduct in violation of Section 177A of the Mississippi Constitution of 1890. The formal complaint against Gunn stated that between August 2, 1989 and January 1, 1990, Gunn, in his official capacity as a justice court judge, dismissed eight traffic tickets without a hearing and without notice to the officer who issued the citation. With the exception of one citation for an expired inspection sticker and one citation for driving without a license, the rest of the citations involved speeding violations.
The complaint alleges that Gunn would "fix" the tickets by writing language on the ticket, ticket stub, and/or the docket book indicating that the tickets were dismissed. Some of these tickets indicated that they were dismissed at the request of the officer, when in fact the officer had made no such request. In one instance, Gunn dismissed a ticket against the wishes of the officer issuing the citation. There was neither a hearing in open court nor was the officer notified of the ticket's disposition. On other occasions, officers agreed or acquiesced to Gunn's dismissal of tickets. Gunn remembers an instance where he asked an officer whether he intended to dismiss a ticket, but contends that he did not ask him to dismiss it. There were also two occasions in which Gunn dismissed tickets assigned to other Lauderdale County justice court judges without any notice, hearing or authority to do so.
Gunn refused to hear scheduled cases on two different occasions. Having heard all of the morning cases on the October 3, 1990, docket, Gunn allegedly handed the clerk three cases scheduled to be heard that afternoon and told her to do whatever she wanted to do with them because he was leaving. Gunn claims to have been suffering from stomach cramps and diarrhea, which prevented him from continuing. On October 17, 1990, Gunn stormed out of the courtroom, leaving behind cases, litigants and witnesses. Gunn attributes his behavior to internal conflicts between him and court personnel. He claims that since the present justice court clerk declared her intention to run for justice court judge in the next election, the working relationship between the two has become strained. Gunn claims that on the day in question, he requested a court clerk in the courtroom, only to be told that he would have to wait until she [clerk] was ready. When another justice court judge sarcastically told him that she would hold court for him, Gunn became upset and left the building.
The final allegation by the Commission alleges that Gunn participated in ex parte communications with a traffic violator in which he reduced a speeding ticket from $53.50 down to $38.50. Gunn admits that he received the phone call, but claims that the caller asked to speak to him specifically. Gunn claims that the caller stated that she wanted to plead guilty to the charge and asked the amount of the fine. Not having the file or ticket in front of him at that time, Gunn quoted the caller what he thought was a "fair" fine. As it turned out, the fine quoted by Gunn was fifteen dollars below the usual fine. Because Gunn claims that his notes of the conversation were illegible, he requested that the *389 deputy clerk make a notation on the ticket to reflect the phone call. It was later determined that the ticket had not been assigned to Gunn, but to another judge.
An Agreed Statement of Facts and Proposed Recommendation was executed by both parties, agreeing that Gunn receive a public reprimand and a $400 fine. On appeal to this Court, a Joint Motion for Approval of Recommendations was filed asking that the recommendations of the Commission be affirmed.

II.
This Court conducts de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Mississippi Judicial Performance Commission. Mississippi Judicial Performance Commission v. Peyton, 555 So.2d 1036 (Miss. 1990); In re Collins, 524 So.2d 553 (Miss. 1987); In Re Inquiry Concerning Garner, 466 So.2d 884 (Miss. 1985); In Re Brown, 458 So.2d 681 (Miss. 1984). Although this Court considers the recommendations of the Commission, we are in no way bound by them and may also impose additional sanctions. Mississippi Judicial Performance Commission v. Peyton, 555 So.2d 1036 (Miss. 1990); In re Collins, 524 So.2d 553 (Miss. 1987).

Ticket Fixing
Between August 2, 1989 and January 1, 1990, Gunn dismissed eight tickets without conducting any hearing or notifying the officers who issued the citations. On two occasions, Gunn dismissed speeding violations which were assigned to another Lauderdale County justice court judge. Procedurally speaking, a court cannot dismiss a case on its own volition. A hearing must be conducted unless the prosecuting attorney moves to dismiss the case. Mississippi Commission on Judicial Performance v. Chinn, 611 So.2d 849, (1992). This Court has taken a firm stance on ticket fixing. In the case of In Re Hearn, 542 So.2d 901 (Miss. 1989), Justice Court Judge Hearn was removed from office for his continued practice of fixing tickets. Hearn had been given a public reprimand two years earlier for fixing tickets. In Re Hearn, 515 So.2d 1225 (Miss. 1987). The offense of ticket fixing has been determined to be a violation of Canons 1, 2 A, 2 B, 3 A(1), and 3 A(4) of the Code of Judicial Conduct of Mississippi Judges. See In Re Seal, 585 So.2d 741, 744 (Miss. 1991).

Ex Parte Communications
The ex parte communications involved a caller who specifically asked to speak with Gunn concerning a ticket. Believing that it was one of his cases, Gunn accepted a guilty plea and quoted a fine to the caller which he thought was fair. It was later determined that the quoted fine was fifteen dollars less than the normal fine. We recently condemned a judge's participation in ex parte communications with persons having matters pending before his court. Chinn, 611 So.2d 849 (1992). Even assuming Gunn was correct in believing that the ticket had been assigned to his docket, once he found out the nature of the call he should have transferred the call to the clerks' office for them to handle.

Willful Misconduct that is Prejudicial to the Administration of Justice, thereby Bringing the Office into Disrepute
Article 6, § 177A, of the Mississippi Constitution (1890) states, in part:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: . .. (b) willful misconduct in office; . . (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute ...
Gunn's actions involving both the October 3 incident as well as the October 17 incident constitute conduct prejudicial to the administration of justice which bring the judicial office into disrepute. The official integrity of the justice court judges is vitally important, for it is on that level that most citizens have their only experience with the judiciary. In Re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss. 1985). Therefore, it is imperative for justice *390 court judges to conduct themselves with the utmost diligence in order to uphold the public's confidence.
In the case of In re [Lloyd] Anderson, 412 So.2d 743 (Miss. 1982), this Court adopted the definitions of "willful misconduct and conduct prejudicial to the administration of justice which bring the judicial office into disrepute" promulgated by the North Carolina Supreme Court in the case of In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977):

Willful misconduct in office is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercises of his authority constitutes bad faith....
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. (emphasis theirs).
412 So.2d at 745. See also In Re Quick, 553 So.2d 522 (Miss. 1989); Miss Jud. Performance Com'n v. Coleman, 553 So.2d 513 (Miss. 1989); In Re Collins, 524 So.2d 553 (Miss. 1987); In Re Stewart, 490 So.2d 882 (Miss. 1986); In Re Inquiry Concerning Garner, 466 So.2d 884 (Miss. 1985); In re [William] Anderson, 451 So.2d 232 (Miss. 1984). "[T]his Court can generally recognize examples of such conduct when presented before the Court." In Re Quick, 553 So.2d 522, 525 (Miss. 1989). This Court in interpreting § 177A(e) in In re (Lloyd) Anderson, 412 So.2d 743 (Miss. 1982) as cited in In re (William) Anderson, 451 So.2d 232 (Miss. 1984), has stated that:
[A] judge may also, through negligence or ignorance, not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. The result is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions.
451 So.2d at 234. Gunn's actions certainly do not send a positive and reaffirming message to the general public. Both the ticket fixing and his actions in and around the courtroom constitute willful conduct prejudicial to the administration of justice, which bring the office into disrepute.

Sanctions
This Court has recognized that the sanction should fit the offense. In Re Bailey, 541 So.2d 1036 (Miss. 1989). Sanctions available to this Court include removal from office, suspension, fine and public reprimand, or private reprimand. See Miss. Const. art. VI, § 177A (1890). When considering a public reprimand, certain factors may be considered as mitigating circumstances. Among these include the length and character of the judge's service, any positive contributions made by the judge to the courts and the community, the lack of prior judicial precedent on the incident in issue, commitment to fairness and innovative procedural form on the part of the judge, the magnitude of the offense, the number of persons affected, and whether "moral turpitude" was involved. In Re Inquiry Concerning Baker, 535 So.2d 47, 54 (Miss. 1988).
Unfortunately the record is silent as to the length of Gunn's service as justice court judge or of any positive contributions which he may have made to the court or community. In terms of judicial precedent, this Court has frequently imposed the penalty of a public reprimand and fine for the offense of ticket fixing. See Mississippi Judicial Performance Commission v. Cowart, 566 So.2d 1251 (Miss. 1990); In Re Seal, 585 So.2d 741 (Miss. 1991). The magnitude *391 of the offenses is limited to the fixing of eight traffic violations and the two incidents where Gunn refused to hold court during scheduled sessions. There were no allegations that Gunn's violations involved moral turpitude. This appears to be Gunn's first offense and it was not shown that he personally benefited from any of these transactions. See In Re Bailey, 541 So.2d 1036 (Miss. 1989). Gunn cooperated fully with the Commission during its investigation, and the Commission firmly believes that these problems will not reoccur.
The facts in this case were uncontroverted and both parties petitioned this Court to affirm the Commission on Judicial Performance's recommendation. We therefore find that the proposed punishment of a public reprimand and a fine of $400 to be reasonably consistent with prior similar cases and hereby affirm the Commission's recommendation. This Court recommends that the reprimand be read in open Circuit Court.
JUDGE WILLIAM B. GUNN IS HEREBY PUBLICLY REPRIMANDED AND FINED $400.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, ROBERTS and SMITH, JJ., concur.