955 So.2d 300 (2007)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Benton Rex GORDON, Jr.
No. 2006-JP-01452-SCT.
Supreme Court of Mississippi.
May 3, 2007.
*301 Luther T. Brantley, Darlene D. Ballard, attorneys for appellant.
Benton Rex Gordon, Jr., Appellee, pro se.
EN BANC.
DICKINSON, Justice, for the Court.
¶ 1. A municipal court judge involved himself in ticket fixing by "passing" fourteen traffic tickets to the file over the objections of the issuing officer. The Mississippi Commission on Judicial Performance ("Commission") filed a formal complaint against the judge alleging willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. The Commission and judge submitted to this Court a joint motion for approval of the recommendation of a public reprimand *302 and assessment of costs.[1] In accordance with our constitutional mandate,[2] we conduct the following review.

FACTS AND PROCEEDINGS BEFORE THE COMMISSION
¶ 2. On or about July 20, 2005, Benton Rex Gordon, Jr., Municipal Court Judge, Union, Mississippi, approached Officer Melody E. McNall prior to the afternoon court session to discuss a number of speeding tickets issued by the officer. Judge Gordon explained that several upset Union residents had contacted him, the police chief, and the clerks of the court about the citations. Judge Gordon informed Officer McNall that he intended to "pass" all of the citations to the files and issue warning letters to the defendants instead. Although Officer McNall expressed her disagreement with this course of action, the defendants were advised not to appear in court because their tickets had already been "passed" to the files. In total, Judge Gordon "passed" tickets for fourteen defendants without requiring them to appear in court.
¶ 3. Acting on Officer McNall's complaint, the Commission filed a formal complaint against Judge Gordon charging him with "willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute" in violation of Canons 1,[3] 2 A,[4] 2 B,[5] 3 A,[6] 3 B(2),[7] 3 B(7),[8] and 3 C(1)[9] of the *303 Mississippi Code of Judicial Conduct and Section 177A of the Mississippi Constitution of 1890, as amended.[10] The parties reached an agreement on the charges prior to Judge Gordon filing a response, and they have submitted to this Court a joint motion for approval of the Commission's recommendation of a public reprimand and assessment of costs.

DISCUSSION
¶ 4. "This Court conducts de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the [Commission]." Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993). However, because we "have the sole power to impose sanctions in judicial misconduct cases," we are obligated to render an independent judgment on the charges. Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004) (citing Miss. Comm'n on Judicial Performance v. Peyton, 645 So.2d 954, 956 (Miss.1994)). Even though the Commission's findings are considered and are given great weight, this Court is not bound by the findings, and additional sanctions may be imposed. Miss. Comm'n on Judicial Performance v. Whitten, 687 So.2d 744, 746 (Miss.1997).
I. Whether Judge Gordon's conduct constituted willful misconduct prejudicial to the administration of justice which brings the judicial office into disrepute.
¶ 5. Our initial task is to determine whether the Commission appropriately charged Judge Gordon with willful misconduct, which we have defined as follows:
`Willful misconduct in office is the improper or wrongful use of the power of his [or her] office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his [or her] authority constitutes bad faith. . . .
`Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.'
In re Anderson, 412 So.2d 743, 745 (Miss. 1982) (quoting In re Nowell, 293 N.C. 235, 248-49, 237 S.E.2d 246, 255 (1977) (emphasis in original)).
¶ 6. Judge Gordon used his position as Municipal Court Judge to fix tickets by "passing" them to the file without requiring the defendants to appear in court and over the objections of the issuing officer. He also engaged in ex parte conversations with defendants. The Commission determined by clear and convincing evidence *304 that Judge Gordon's actions violated Canons 1, 2 A, 2 B, 3 A, 3 B(2), 3 B(7), and 3 C(1) of the Mississippi Code of Judicial Conduct and Section 177A of the Mississippi Constitution of 1890, as amended. We can find no error in the Commission's determination.
¶ 7. Whether Judge Gordon's behavior was actually willful is of no consequence. Miss. Comm'n on Judicial Performance v. Cowart, 936 So.2d 343, 347 (Miss.2006). "The result is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions." In re Anderson, 451 So.2d 232, 234 (Miss.1984).
¶ 8. This Court historically has taken a firm stance on the practice of ticket fixing. Gunn, 614 So.2d at 389 (citing In re Hearn, 542 So.2d 901, 902-03 (Miss.1989) (judge removed from office for continuing to fix tickets)). We have, without exception, found such behavior to constitute misconduct. See, e.g., Cowart, 936 So.2d at 347 (willful misconduct for judge to contact an officer and dispose of traffic violations without hearings or notice to the issuing officer); Miss. Comm'n on Judicial Performance v. Williams, 880 So.2d 343, 346 (Miss.2004) (willful misconduct for judge to find four defendants "not guilty" of speeding violations before defendants appeared in court or had their cases set for trial); Miss. Comm'n on Judicial Performance v. Boykin, 763 So.2d 872, 874 (Miss.2000) (willful misconduct for judge to dismiss tickets based on ex parte communications with the defendants without holding hearings or notifying the issuing officers); Gunn, 614 So.2d at 389 (willful misconduct for judge to dismiss traffic tickets without holding hearings or notifying the issuing officers).
¶ 9. Likewise, this Court has repeatedly characterized a judge's participation in ex parte communications as willful misconduct. See, e.g., Cowart, 936 So.2d at 347 (ex parte communication with plaintiff in a domestic violence case was willful misconduct); Miss. Comm'n on Judicial Performance v. Blakeney, 848 So.2d 824, 826 (Miss.2003) (ex parte communication with police officer in DUI and drug possession case was willful misconduct); Boykin, 763 So.2d at 874 (ex parte communications with multiple defendants in traffic violation cases was willful misconduct); Miss. Comm'n on Judicial Performance v. Vess, 692 So.2d 80, 84 (Miss.1997) (ex parte communications with criminal defendant, arresting officer, and prosecutor was willful misconduct).
¶ 10. In accordance with this precedent, we find that Judge Gordon's conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. Accordingly, we adopt the Commission's findings.
II. Whether Judge Gordon should be publicly reprimanded and assessed all costs as recommended by the Commission.
¶ 11. The Commission has recommended that Judge Gordon be publicly reprimanded and assessed all costs associated with this proceeding in the amount of $100. The Commission and Judge Gordon have signed an Agreed Statement of Facts and Proposed Recommendation to this effect, and the agreement was unanimously accepted and adopted by the Commission. However, "[i]mposing sanctions is left solely to the discretion of this Court," and we endeavor to match the sanction with the offense at issue. Cowart, 936 So.2d at 347.
¶ 12. Pursuant to this Court's holding in Gibson, 883 So.2d at 1158, this Court must review the following mitigating *305 factors when determining the appropriateness of a recommended sanction:
(1) The length and character of the judge's public service.
¶ 13. The violations at issue occurred during Judge Gordon's twelfth year as a municipal court judge. The record is silent as to the character of his service.
(2) Whether there is any prior case law on point.
¶ 14. A great deal of judicial precedent exists on these issues. See case law cited infra.
(3) The magnitude of the offense and the harm suffered.
¶ 15. Judge Gordon's willful misconduct violated Canons 1, 2 A, 2 B, 3 A, 3 B(2), 3 B(7), and 3 C(1) of the Mississippi Code of Judicial Conduct and Section 177A of the Mississippi Constitution of 1890, as amended. The violation of multiple Canons and the Mississippi Constitution itself reflects the seriousness of the misconduct.
¶ 16. The harm caused by Judge Gordon's behavior extended beyond injuries to the integrity of his judicial office. His conduct compromised in multiple ways the integrity of Officer McNall, as well as our system of justice. For instance, Judge Gordon's actions gave the impermissible (but apparently correct) impression to some Union residents that they had sufficient influence over him to deny the prosecution a fair opportunity to present its case against the defendants at trial. Finally, as stated by the Commission, "the residents of Union, Mississippi, were deprived of the municipality's legitimate interest in punishing drivers who violate the [city's speed limits]."
(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 17. The only prior disciplinary matter involving Judge Gordon is an unrelated, informal Commission action in 1994. Therefore, the record does not demonstrate that Judge Gordon's actions evidence a pattern of misconduct.
¶ 18. Judge Gordon improperly "passed" fourteen tickets to the file for fourteen different defendants without requiring any of them to appear in court. This action was taken despite the clearly voiced objection of the issuing officer. However, these violations were relatively close in time and were collectively the subject of one disciplinary action against Judge Gordon.
(5) Whether moral turpitude was involved.
¶ 19. In Gibson, this Court defined moral turpitude to include "actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." 883 So.2d at 1158 n. 2. The Commission argues that "[t]he act of `ticket fixing' interferes with the administration of justice by interfering with the judicial process," and therefore, Gordon's conduct involves moral turpitude. See Cowart, 936 So.2d at 350.
¶ 20. The bottom line of this element is that we must determine whether a judge's conduct crosses the line from simple negligence or mistake, to willful conduct which takes advantage of a judge's position for greed or other inappropriate motives. If the conduct willfully subverts justice, more punishment is warranted. In this instance, we hold that "fixing tickets" willfully subverts justice; therefore, Judge *306 Gordon has crossed the line of moral turpitude.
(6) The presence or absence of mitigating or aggravating circumstances.
¶ 21. Although there is little in the record before us concerning mitigating or aggravating circumstances, we find it quite significant that Judge Gordon readily acknowledged his inappropriate conduct and took responsibility for his actions.
¶ 22. The above Gibson factors, when considered together under our standard of review, lead us to the conclusion that the Commission's recommendation is insufficient considering the egregious nature of Judge Gordon's conduct. We therefore find that the Commission's recommendation should be enhanced to provide for a thirty-day suspension.
¶ 23. In several prior judicial misconduct cases involving ex parte communications in conjunction with improper ticket fixing, this Court has found a public reprimand and assessment of costs to be appropriate. See Williams, 880 So.2d at 347 ("Often the sanction for `fixing' tickets is a public reprimand, fine, and assessment of costs."); Miss. Comm'n on Judicial Performance v. Warren, 791 So.2d 194, 196 (Miss.2001) (imposing a public reprimand, a $765 fine, and $100 in court costs for "fixing" tickets based on ex parte communications); Gunn, 614 So.2d at 388 (adopting Commission's recommendations for public reprimand and a $400 fine for a judge who "fixed" eight traffic tickets by writing on the ticket or docket book that the charges were dismissed).
¶ 24. In the instant case, Judge Gordon involved himself in ticket fixing by "passing" fourteen tickets to the file without requiring the defendants to appear in court and over the specific objections of the issuing officer. This misconduct was precipitated by Judge Gordon's ex parte communications with some of the defendants. It is true that, in the past, this Court has not always required a suspension for similar conduct. However, since Miss. Comm'n On Judicial Performance v. Sanford, this Court has made it very clear that conduct akin to Judge Gordon's warrants a more severe penalty, including a suspension. 941 So.2d 209 (Miss.2006). In Sanford, we recognized the need for consistency in imposing sanctions but held that where egregious conduct is apparent, the appropriate sanction is not only a reprimand, but also a suspension. Accordingly, Judge Gordon's conduct was egregious, and we find that the Commission's recommendation should be enhanced to provide for a thirty-day suspension.

CONCLUSION
¶ 25. For the reasons herein, we find the egregious conduct of Benton Rex Gordon, Jr., Municipal Court Judge, Union, Mississippi, constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution of 1890, as amended. The Joint Motion for Approval of Recommendations filed by the Commission and Judge Gordon is granted, and accordingly, Judge Gordon is to be publicly reprimanded, suspended for thirty days and assessed $100 in court costs.
¶ 26. JUDGE BENTON REX GORDON, JR., MUNICIPAL COURT JUDGE, SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE OF THE NEWTON COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL; IS SUSPENDED WITHOUT PAY FOR THIRTY (30) DAYS FROM AND AFTER *307 THE DATE OF ISSUANCE OF THE MANDATE IN THIS CASE AND ASSESSED COURT COSTS OF $100.00.
CARLSON AND RANDOLPH, JJ., CONCUR. EASLEY AND GRAVES, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. SMITH, C.J., WALLER AND DIAZ, P.JJ., NOT PARTICIPATING.
NOTES
[1] With regard to this joint motion, we hereby grant in part and deny in part based on the enhanced sentence imposed pursuant to this opinion.
[2] "On recommendation of the commission on judicial performance, the Supreme Court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: . . . (b) willful misconduct in office; . . . or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute. . . ." Miss. Const. art. 6, § 177A.
[3] "An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective." Miss. Code of Judicial Conduct, Canon 1.
[4] "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Miss.Code of Judicial Conduct, Canon 2 A.
[5] "Judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges. . . ." Miss.Code of Judicial Conduct, Canon 2 B.
[6] "The judicial duties of judges take precedence over all their other activities. The judges' judicial duties include all the duties of their office prescribed by law. . . ." Miss.Code of Judicial Conduct, Canon 3 A.
[7] "A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism." Miss.Code of Judicial Conduct, Canon 3 B(2).
[8] "A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding. . . ." Miss.Code of Judicial Conduct, Canon 3 B(7).
[9] "A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business." Miss.Code of Judicial Conduct, Canon 3 C(1).
[10] See footnote 1, supra.