18 So.3d 251 (2009)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Richard BRADFORD, III.
No. 2008-JP-01989-SCT.
Supreme Court of Mississippi.
October 1, 2009.
*252 Luther T. Brantley, III, Darlene Ballard, attorneys for appellant.
Mark W. Prewitt, Vicksburg, attorney for appellee.
EN BANC.
DICKINSON, Justice, for the Court.
¶ 1. In this judicial misconduct matter, this Court must address whether Justice Court Judge Richard Bradford, *253 III, engaged in sanctionable conduct pursuant to section 177A of the Mississippi Constitution and, if he did, the appropriate punishment for such misconduct. This Court conducts a de novo review of judicial misconduct proceedings, but gives great deference to the findings and recommendations of the Mississippi Commission on Judicial Performance, provided such findings are based on clear and convincing evidence. Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993). Although this Court gives deference to the Commission's findings, this Court is the trier of fact and has the sole power to impose sanctions in judicial misconduct cases. Miss. Comm'n on Judicial Performance v. Peyton, 645 So.2d 954, 956 (Miss.1994).
¶ 2. The Commission found that Judge Bradford's conduct should be sanctioned pursuant to Section 177A, in that he engaged in "willful misconduct in office" and "conduct prejudicial to the administration of justice which brings the judicial office into disrepute[.]" Miss. Const. art. 6, § 177A (b) & (e).
¶ 3. The following complaints were filed against Judge Bradford regarding inappropriate actions taken while acting in his official capacity as justice court judge: engaging in ex parte communications in a rental-dispute case and subsequently ruling in favor of the party with whom he had the ex parte communications; continuing a case in which all of the parties failed to appear for court without such motion from either of the parties in violation of Rule 2.06 of the Uniform Rules of Procedure for Justice Court; dismissing a case without prejudice in which all of the parties failed to appear for court in violation of Rule 2.06 of the Uniform Rules of Procedure for Justice Court; attempting to have two traffic citations which had been issued to Kacy D. Jones and assigned to another justice court judge dismissed by the county prosecutor; dismissing a profane-and-indecent-language case without motion or proper notification to the prosecutor; dismissing a failure-to-abide-by-a-protective-order case without proper motion or notification to the prosecutor; dismissing second-offense DUI charges without the prosecution being allowed to call the issuing officer as a witness; non-adjudicating a first-offense DUI charge against a minor without notice to the prosecutor after attempting, but failing, to transfer the matter to youth court; ordering contempt warrants issued against individuals in the absence of pending charges against those individuals and in the absence of notice or a hearing for such individuals; and dismissing charges of failure to abide by a protective order without allowing the prosecutor to be present or to present witnesses.
¶ 4. This Court has described behavior that constitutes willful misconduct in the judicial office as:
... improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith.... A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.... Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
In re Quick, 553 So.2d 522, 524-25 (Miss. 1989). The Commission determined by clear and convincing evidence that Judge Bradford's actions were in violation of Canons 1, 2A, 2B, 3B(2), 3B(7) and 3(C)1 of the Code of Judicial Conduct and therefore were sanctionable pursuant to Section 177A, finding that said conduct constituted *254 willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. The Commission recommended that Judge Bradford be publicly reprimanded and suspended from the office of justice court judge without pay for a period of thirty days pursuant to Section 177A, and be assessed costs of the proceeding, which was $100.
¶ 5. Judge Bradford has agreed to the Commission's recommendation and has joined the Commission's motion for this Court's approval of its recommendations. Therefore, Judge Bradford acknowledges that his actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute, and this Court need not make any further findings on this issue.
¶ 6. As to appropriateness of the recommended consequences for Judge Bradford's actions, Section 177A of the Mississippi Constitution of 1890, as amended, provides that upon recommendation of the Commission, a judge may be removed, suspended, fined, publicly censured or publicly reprimanded by this Court. Miss. Comm'n on Judicial Performance v. Walker, 565 So.2d 1117, 1128-1132 (Miss. 1990). Additionally, in In re Bailey, 541 So.2d 1036, 1039 (Miss.1989), this Court held that the sanction "ought to fit the offense."
¶ 7. This Court has held that the appropriateness of sanctions is to be determined by examining the following factors: (1) the length and character of the judge's public service, (2) whether there is any prior caselaw on point, (3) the magnitude of the offense and the harm suffered, (4) whether the misconduct is an isolated incident or evidences a pattern of conduct, (5) whether moral turpitude was involved, and (6) the presence or absence of mitigating or aggravating circumstances. Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004). Each of these elements is examined below.

The length and character of the judge's public service.
¶ 8. When the violations occurred, Judge Bradford was in his tenth year as a justice court judge. Otherwise, there is no evidence on the record of the length or character of Judge Bradford's public service.

Whether there is prior caselaw on point.
¶ 9. The complaint addresses ten violations involving: ex parte communications, two counts of violating Rule 2.06 of the Uniform Rules of Procedure for Justice Court, an attempt to "fix" traffic tickets, five counts of improperly dismissing or disposing of charges, and an improper order to issue two contempt warrants.

Ex parte Communications
¶ 10. Judge Bradford's ex parte communications with a litigant were clearly prohibited by Canon 3B(7), and such conduct has been found by this Court to constitute misconduct. See Miss. Comm'n on Judicial Performance v. Chinn, 611 So.2d 849, 852 (Miss.1992), Miss. Comm'n of Judicial Performance v. Dodds, 680 So.2d 180, 190-91 (Miss.1996), and Miss. Comm'n of Judicial Performance v. Lewis, 913 So.2d 266 (Miss.2005). In each of the cases cited by the Commission, the judge was removed from the bench. However, the Chinn and Dodds cases involved significantly more numerous and egregious complaints than the case presently before us, and the Commission recommended removal from office in both matters. Furthermore, the Lewis case involved ex parte communications in which the justice court judge was making sexual advances toward the female parties with whom he was having such communication. In each of these cases, unlike the present matter, the Commission *255 proposed the judge be removed from the bench. In each of these cases, this Court adopted the Commission's recommendation.

Rule 2.06 of the Uniform Rules of Procedure for Justice Court
¶ 11. Rule 2.06 states, in pertinent part, "If neither the plaintiff nor the defendant appear on the trial date, the court shall dismiss the case with prejudice." Judge Bradford violated this rule in two instances, one in which he continued the case absent request for such relief by either party, and another in which he dismissed the case without prejudice. In Miss. Comm'n on Judicial Performance v. Britton, 936 So.2d 898 (Miss.2006), this Court held, inter alia, that a justice court judge had ignored Rule 2.06 of the Uniform Rules of Procedure for Justice Court, and we adopted the Commission's recommendation that the judge be publicly reprimanded. However, this Court added the thirty-day suspension to the recommendation of the Commission. In the present matter, the Commission recommended a thirty-day suspension. Furthermore, Judge Britton, unlike Judge Bradford, previously had run-ins with the Commission. On three separate occasions, Judge Britton had received an instructive letter, a private reprimand, and a private admonishment resulting in a memorandum of understanding. Judge Bradford has had no prior experiences before the Commission.

"Fixing Tickets" and Other Dispositive Actions
¶ 12. Judge Bradford unsuccessfully requested the prosecutor to dismiss traffic offenses in a case pending before another judge. This Court has held that, "Often the sanction for `fixing' tickets is a public reprimand, fine and assessment of the costs." In re Bailey, 541 So.2d 1036 (Miss.1989). See also Miss. Comm'n on Judicial Performance v. Warren, 791 So.2d 194 (Miss.2001); Miss. Comm'n on Judicial Performance v. Boykin, 763 So.2d 872, 872 (Miss.2000).
¶ 13. The Commission states that the other instances in which Judge Bradford dismissed or took other dispositive action in cases without notifying the prosecutor or affording the prosecutor the opportunity to present witnesses is akin to "ticket fixing," and cites several cases in which a judge dismissed a case before allowing the prosecutor to present witnesses. See Miss. Comm'n on Judicial Performance v. Williams, 880 So.2d 343 (Miss.2004), Miss. Comm'n on Judicial Performance v. Boykin, 763 So.2d 872 (Miss.2000), and Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387 (Miss.1993). In each of these cases, the justice court judges at issue improperly disposed of certain cases or charges. In each matter, this Court adopted the recommendation of the Commission, which included a public reprimand and fine.

Improper Issuance of Warrants
¶ 14. Judge Bradford instructed the clerk to issue warrants against two women against whom no criminal charges had been filed, and no notice of the hearing was provided. In Mississippi Commission on Judicial Performance v. Carr, 990 So.2d 763 (Miss.2008), the judge used his position to threaten a woman with arrest at a time when no criminal charges were pending against the her. The judge was publicly reprimanded, suspended without pay for sixty days, fined $2,000 and assessed the costs of the proceeding, $100. The Commission characterizes Judge Bradford as having "acted in a similar manner," but because of the particular facts and circumstances in the Carr case, this Court found that the judge was using his public office to promote the private interests of others. The Carr Court, however, adopted the punishment suggested *256 by the Commission. As in the present case, the judge and the Commission filed a joint recommendation, which this Court followed. Judge Carr received a harsher penalty than the Commission recommends for Judge Bradford. However, Judge Carr previously had been privately reprimanded once and publicly reprimanded twice. Judge Bradford, on the other hand, has never before been reprimanded by this Court and does not have a disciplinary history with the Commission.

The magnitude of the offense and the harm suffered.
¶ 15. Both the Commission and Judge Bradford agree that Judge Bradford's actions compromised the integrity of the arresting officers, the prosecutor, the litigants and the judicial office itself. The motion states that "all who appeared before the judge were not treated in a fair and impartial manner." Furthermore, the Commission and Judge Bradford note that "the residents of Warren County, Mississippi were deprived of the county's legitimate interest in fining drivers and other offenders who violate the laws of the State of Mississippi" and label Judge Bradford's violations of the Canons of Judicial Performance "significant."

Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 16. Although Judge Bradford does not have a disciplinary history with the Commission, he has evidenced a pattern of conduct based on the ten violations cited within the complaint. This Court has held that three incidents of improper behavior before the Court constitute a "pattern of behavior." Miss. Comm'n on Judicial Performance v. Cowart, 936 So.2d 343, 350 (Miss.2006). Therefore, the numerous violations presently before the Court constitute a pattern of behavior.

Whether moral turpitude was involved.
Moral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute. Miss. Comm'n on Judicial Performance v. Gibson, Jr., 883 So.2d 1155, 1157 (Miss.2004). The Commission and Judge Bradford are in agreement that Judge Bradford's actions are in violation of Section 177A of the Mississippi Constitution of 1890, as amended, and that they interfere with the administration of justice. Therefore, Judge Bradford's conduct involves moral turpitude.
¶ 17. Mississippi Commission Judicial Performance v. Gordon, 955 So.2d 300 (Miss.2007) and Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209 (Miss.2006), are cases in which this Court set the standard for actions involving moral turpitude, as well as the penalties that such a finding should carry. In Gordon, this Court said
The bottom line of [a finding of moral turpitude] is that we must determine whether a judge's conduct crosses the line from simple negligence or mistake, to willful conduct which takes advantage of a judge's position for greed or other inappropriate motives. If the conduct willfully subverts justice, more punishment is warranted. In this instance, we hold that "fixing tickets" willfully subverts justice; therefore, Judge Gordon has crossed the line of moral turpitude.
Gordon, 955 So.2d at 305-06. In both of these matters, this Court handed down stronger penalties than the penalty that was recommended by the Commission for Judge Bradford. However, the Commission did not recommend a suspension from office in either of those matters, and this Court imposed a thirty-day suspension *257 from office. Thirty days suspension was recommended by the Commission in the present matter. Therefore, the suspension recommended by the Commission is adequate to address Judge Bradford's moral turpitude.

The presence or absence of mitigating or aggravating circumstances.
¶ 18. This Court has held that mitigating circumstances exist when there is a public acknowledgment of the inappropriateness of the conduct and agreement with the findings of the Commission. Gibson, 883 So.2d at 1157. Accordingly, Judge Bradford agrees with the findings of the Commission and the proposed sanction of public reprimand. Even so, the motion submitted on behalf on both parties states that there are no mitigating or aggravating factors in the record.
¶ 19. The Commission has recommended, and Judge Bradford has agreed to, a public reprimand, a suspension of thirty days without pay, and an assessment of costs in the amount of $100. The Commission submits that such penalty is consistent with sanctions as found in In re Baker, 535 So.2d 47 (Miss.1988), and Mississippi Commission on Judicial Performance v. Walker, 565 So.2d 1117 (Miss. 1990), as modified by Mississippi Commission of Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004). The Commission submits that, in considering the total course of conduct by Judge Bradford, the recommendation "fits the offense."
¶ 20. This Court previously has decided judicial misconduct matters in which the Commission's recommendation was not found to "fit the offense," and a harsher sanction was imposed. For example, Mississippi Commission on Judicial Performance v. Osborne, 977 So.2d 314 (Miss.2008), was a case in which Judge Osborne was involved in a lengthy public confrontation in which a man who was legally repossessing Judge Osborne's wife's automobile was injured. This Court's opinion in that matter reads:
The confrontation between [Osborne], [the man repossessing the car] and the [police] officers [who had responded to the situation] lasted from 45 minutes to an hour on the public streets of the City of Greenwood, in full view of the public, traffic was blocked and several people, other than the police, gathered at the scene. The matter was finally brought to a close when [the man repossessing the car], for some unexplained reason, was taken into custody by the Greenwood police, placed in handcuffs, thrown to the ground, injuring his head.
Miss. Comm'n. on Judicial Performance v. Osborne, 977 So.2d 314, 317 (Miss.2008). This Court suspended Judge Osborne for 180 days, rather than the ninety days suggested by the Commission. However, the charges against Judge Osborne in that matter were far more egregious than the charges in the present matter. In the Osborne opinion, this Court stated that the following facts should be considered in determining the appropriate sanctions:
First, Judge Osborne's actions occurred in full view of the public over an extended period of time.... Second, Judge Osborne invoked the authority of his office during the event to thwart the attempt by police to peacefully resolve the matter.... Third, Judge Osborne did not act on his own behalf, but that of his wife and mother-in-law. In doing so, Judge Osborne used his office for the direct personal gain of family and indirect personal gain.... We are certain that the combination of these factors warrants a substantial penalty.
Osborne, 977 So.2d at 326-327. In Osborne, this Court discussed cases with similar factual scenarios relating to each of *258 the facts listed above. However, it is clear from these considerations that Judge Osborne's case was not at all factually similar to the case at bar. Furthermore, this was not Judge Osborne's first appearance before the Commission.
¶ 21. Mississippi Commission on Judicial Performance v. Fowlkes, 967 So.2d 12 (Miss.2007), is another case in which this Court issued a harsher sanction than what had been recommended by the Commission. In that matter, unlike the present matter, Judge Fowlkes already had received a private reprimand for the exact type of conduct he was accused of in the case before this Court. This is Judge Bradford's first incident with the Commission and this Court. Furthermore, the harsher penalty Judge Fowlkes received was the exact penalty the Commission recommends for Judge Bradford: public reprimand, thirty-day suspension without pay, and assessment of the costs of the proceedings in the amount of $100.
¶ 22. This Court's willingness to impose harsher penalties than those recommended by the Commission usually stems from the number of times the judge has appeared before the Commission (and subsequently this Court), rather than the number of complaints listed in each appearance. In Mississippi Commission on Judicial Performance v. McPhail, 874 So.2d 441 (Miss. 2004), the Commission found that Judge McPhail "habitually takes civil cases under advisement and does not render timely decisions." Id. at 443. There were only five complaints against Judge McPhail, rather than Judge Bradford's ten, and the Commission recommended the same sanction as in the present matter. There is nothing in the McPhail opinion to suggest that Judge McPhail previously had been brought before the Commission. This Court, therefore, found the recommendation to be appropriate.
¶ 23. The number of complaints listed in the present matter is not so extraordinary as to persuade us to go against this Court's clear precedent. Furthermore, where this Court has issued a thirty-day suspension when not recommended by the Commission in prior cases, the Commission has recommended no suspension at all. We know of no case in which a judge making a first appearance before the Commission and this Court, for whom the Commission recommended a suspension from office, in which this Court imposed a longer suspension from office and a fine greater than that resulting from the direct costs of the judge's misbehavior.

CONCLUSION
¶ 24. We find the recommendations of the Commission with regard to Judge Bradford's punishment are reasonable and supported by both the record and our precedent. Therefore, the recommendations of the Commission are adopted, and Judge Bradford shall receive a public reprimand, shall be suspended for thirty days without pay, and shall be assessed with the costs of this matter in the amount of $100.
¶ 25. WARREN COUNTY JUSTICE COURT JUDGE RICHARD BRADFORD, III SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE OF THE WARREN COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL; IS SUSPENDED WITHOUT PAY FOR THIRTY (30) DAYS FROM AND AFTER THE DATE OF ISSUANCE OF THE MANDATE IN THIS CASE, AND IS ASSESSED COSTS IN THE AMOUNT OF $ 100.00.
WALLER, C.J., GRAVES, P.J., LAMAR, KITCHENS, CHANDLER *259 AND PIERCE, JJ. CONCUR. RANDOLPH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, P.J.
RANDOLPH, Justice, Concurring in Part and Dissenting in Part.

I.
¶ 26. Notwithstanding the deference we accord the Mississippi Commission on Judicial Performance, I am constrained to dissent to the sanctions recommended by the Commission and adopted by the majority. The sanctions are woefully inadequate and nearly naught to the offenses, as opposed to "ought [to] fit the offense." In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989). The sanctions imposed fail to adequately address the multitude of separate offenses and fail to consider collectively the multiple acts of misconduct exhibited by Judge Bradford. Essentially, his overall course of misconduct is treated as one incident, thus allowing him to circumvent some of the Gibson factors. See Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004). This proceeding resulted from a host of complaints, unlike "first-time offenders" such as Gordon and Sanford. See Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300, 305 (Miss.2007); Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 216 (Miss.2006).
¶ 27. The multiple complaints, brought by separate victims of Judge Bradford's egregious behavior on (and off) the bench, should be individually considered, and then considered in toto, to determine the proper sanctions. Absent such analysis, the sanctions imposed do little to recognize the harm to the public and will only magnify the public's distrust for the judicial disciplinary process.

A. EX PARTE COMMUNICATIONS

¶ 28. The Joint Memorandum relates the following regarding ex parte communications:
Ms. Ford petitioned the court for possession of rental property and a judgment against Ms. Reynolds in the sum of $1162.00. [Judge Bradford] heard testimony from both sides and then took the case under advisement. After Ms. Reynolds left the courtroom and after court concluded, Ms. Ford went back into the courtroom and engaged in an ex parte conversation with [Judge Bradford]. [Judge Bradford] then issued a judgment in favor of Ms. Ford in the sum of $964.00 and awarded her immediate possession of the premises.
Thus, one litigant went home falsely believing that the court was considering the merits (or lack thereof) of her case, foolishly assuming that the decision would be based on the evidence adduced during the trial. Little did she know that the proceeding continued to a conclusion in her absence. It does not take an attorney or a judge to discern that, not only was her right of equality before the bench violated, but also that her due process rights became meaningless aspirations. Judge Bradford not only removed "Lady Justice's blindfold," she was removed from the courtroom. This complaint, standing alone, would mandate the sanctions imposed today.

B. TICKET-FIXING

¶ 29. Not to be satisfied with willful misconduct in "his courtroom," Judge Bradford sought to influence the administration of justice before other judges. A separate complaint recounts that Judge Bradford intervened in a case not before him by calling the county prosecutor and requesting that traffic citations be dismissed in a case assigned to another judge. *260 A strong argument exists that this misconduct exceeds the more common complaint of fixing tickets, for he chose secretly to influence a case assigned to another judge. Seeking special treatment for a privileged few is a subversion of justice. Such misconduct, standing alone, would, once again, mandate today's punishment.
¶ 30. The majority notes the Commission's finding that Judge Bradford's other dispositive actions were "akin to `ticket fixing.'" Most ticket-fixing cases involve incidence(s) of ex parte communication(s) that result in speeding ticket(s) and/or other minor infraction(s) being remanded to the file.[1] In stark contrast, Judge Bradford improperly dismissed multiple proceedings involving infractions that hardly qualify as minor, to wit: (1) violations of protective orders, (2) second-offense DUI, (3) first-offense DUI by a minor. If these infractions are "akin" to run-of-the-mill, ticket-fixing cases, they are distant relatives from the illegitimate side of the family. Once again, any one of these three separate acts, standing alone, would merit the sanctions prescribed today.

C. WARRANTS

¶ 31. Judge Bradford's improper issuance of warrants resulted from his modification of a domestic-abuse protective order to add the mother and sister of the originally-restrained party, without notice, hearing, or evidence. This exercise of nonsanctioned governmental abuse against the citizens of this State must be castigated, lest our citizens enjoy no more protection from our Constitution than they could expect from the courts of a totalitarian regime. The joint memorandum brief states, "[Judge Bradford] ordered the deputy clerk to issue contempt warrants against [the two women], though no charges had ever been filed against them... nor were they notified to be present at the hearing...." The Commission found that Judge Bradford's actions were similar to those of Judge Carr. See Miss. Comm'n on Judicial Performance v. Carr, 990 So.2d 763, 765 (Miss.2008). Judge Carr was ordered by this Court to be publicly reprimanded, suspended for sixty days, fined $2,000, and assessed costs of $100. Id. at 771. The majority distinguishes Carr based on prior actions taken by the Court, yet fails to take into account the ten separate complaints, presented to this Court as one action. Likewise, this complaint, standing alone, merits the sanctions imposed.

D. UNIFORM RULES

¶ 32. Judge Bradford also violated the Uniform Rules of Procedure for Justice Court. In two cases, scheduled on the same day, involving the same defendant landlord, all parties failed to appear. The judge continued one case and dismissed the other without prejudice, both actions in direct conflict with the rules. Such actions give the impression that litigants can flout the rules of the court without consequence (that is, if Judge Bradford is presiding, and is of a mind to violate mandatory procedural rules).

II.
¶ 33. This Court has clearly signaled to the Commission that it is time for the sun to set on the "good ole boys" days, as this Court increasingly has shown its disdain for judicial misconduct and has enhanced sanctions beyond those recommended by *261 the Commission.[2] We repeatedly have given the following admonition, "Official integrity of our Justice Court Judges is vitally important, for it is on that level that many citizens have their only experience with the judiciary." Miss. Comm'n on Judicial Performance v. Vess, 10 So.3d 486, 493 (Miss.2009) (quoting In re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss.1985)).
¶ 34. Beginning with Sanford and Gordon, this Court imposed more stringent standards regarding misconduct by judges. See Gordon, 955 So.2d at 306; Sanford, 941 So.2d at 218. In each case, this Court increased the recommended sanction by adding a thirty-day suspension. See id. Each case was presented as a single complaint. See id. Judge Sanford admitted to having told the county sheriff to order a deputy to be late for a hearing so that the judge could dismiss a DUI charge. Sanford, 941 So.2d at 210. The sheriff complied with this, and the deputy waited until after the DUI case had been dismissed, and then arrived to testify in other cases. Id. Judge Gordon, a municipal judge, admitted to having had ex parte communications that led to the passing of fourteen speeding tickets to the file in a single day. Gordon, 955 So.2d at 302. In each case, the Court signaled a change in policy by citing former cases in which a public reprimand and the assessment of costs had been considered the appropriate sanction. See Gordon, 955 So.2d at 306; Sanford, 941 So.2d at 216 n. 3.
¶ 35. In Sanford, this Court, despite the Commission's finding to the contrary, found that Judge Sanford's conduct also involved moral turpitude. See Sanford, 941 So.2d at 216-17. In Gordon, this Court also found that the conduct involved moral turpitude, and furnished a standard for consideration of moral turpitude, as follows:
The bottom line of this element is that we must determine whether a judge's conduct crosses the line from simple negligence or mistake, to willful conduct which takes advantage of a judge's position for greed or other inappropriate motives. If the conduct willfully subverts justice, more punishment is warranted. In this instance, we hold that "fixing tickets" willfully subverts justice; therefore, Judge Gordon has crossed the line of moral turpitude.
Gordon, 955 So.2d at 305-06. In the instant case, both the Commission and the majority cite Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004). The majority acknowledges that Judge Bradford's conduct involves moral turpitude. His impermissible actions, in the "ticket-fixing" matters alone, satisfy both the Gibson and the Gordon definitions of acts involving moral turpitude; thus enhanced punishment is warranted. See Gordon, 955 So.2d at 305-06; Gibson, 883 So.2d at 1157.

III.
¶ 36. More consideration should be given to both the magnitude of the offenses and the harm suffered. The Commission's "bundling of complaints," like a communications company bundles services, is particularly troubling. Is expediency more important than the protection of our citizens and our constitution? The majority acquiesces to this procedural ploy by reducing the ten complaints of misconduct to four categories. The majority then analyzes *262 the categories separately (but never in toto) to compare to the separate violations of similar judicial-misconduct cases. I submit, this Court has not seen a case quite like this one. Thus, the analysis fails to take into consideration Judge Bradford's overall dismal breach of judicial canons. Many of the cited cases involve judges who committed only one category of misconduct, brought on a single complaint, but not the diversity of violations that triggered ten complaints.
¶ 37. Little weight is given to the finding that Judge Bradford's misconduct constituted a pattern, as the Court adopts the Commission's recommendation because this is the first time Judge Bradford has been before the Commission and this Court. I cannot agree that this is the road we should travel. A pattern of multiple and unrelated egregious misconduct is deserving of an enhanced sanction. A pattern is a pattern, regardless of whether it comes to us in one or multiple proceedings. We should not ignore a multiplicity of misconduct, just because multiple complaints of judicial misconduct are presented to this Court in one package. This case involves ten separate complaints involving eleven cases before Judge Bradford, which directly affected eighteen separate citizens, as well as other officers of the court, a county prosecutor, and another justice court judge.
¶ 38. This is not a matter of one act of misconduct resulting in multiple violations of the Code of Judicial Conduct. The application of a blanket, first-time-offender rule, if followed in all courts of general jurisdiction, would mandate all first-time offenders (not just the deserving) being given special consideration just because they were able to commit a long list of crimes before being brought to justice. See U.S. v. Madoff, 626 F.Supp.2d 420 (S.D.N.Y.2009); U.S. v. Madoff, 2009 WL 1055792 (S.D.N.Y.2009). Despite the fact that it was Bernard Madoff's first time before the bar of justice, he was given the maximum statutory sentence of 150 years in prison for the eleven counts in the indictment. See Diana B. Henriques, Madoff Is Sentenced to 150 Years for Ponzi Scheme, N.Y. Times, June 30, 2009, at A1.
¶ 39. In his pre-sentencing statement to Madoff, the judge recognized that such a long sentence "would be largely symbolic" for the seventy-one-year-old defendant, but explained that "`symbolism is important for at least three reasons' ... citing the need for retribution, deterrence and a measure of justice for the victims." Id. The judge added that the victims were "`placing their trust in the system of justice.'" Id. Similarly, our Court has affirmed maximum or near-maximum statutory sentences in criminal cases, despite a defendant's status as a first-time offender. See Ford v. State, 975 So.2d 859, 870 (Miss.2008); Burchfield v. State, 892 So.2d 191, 202 (Miss.2004). See also Alexander v. State, 979 So.2d 716, 718 (Miss.Ct.App. 2007); Pittman v. State, 904 So.2d 1185, 1194 (Miss.Ct.App.2004). To consider sanctions differently for offending judges is an affront to every citizen who expects (and deserves) protection from unjust proceedings in all courts, justice court included. Sanctions always should take into account "retribution, deterrence, and a measure of justice" for those who place their "trust in the system of justice." See Henriques, supra.
¶ 40. The majority's finding that the number of complaints is not so extraordinary as to change this Court's clear precedent begs the question: What is an ordinary number of complaints? The claim of clear precedent is somewhat dubious, as we have, on more than one occasion, imposed greater sanctions than those recommended by the Commission.
¶ 41. Likewise, our judicial-performance jurisprudence is not of long standing. *263 The first case from the Commission was In re Anderson, 412 So.2d 743 (Miss.1982). That opinion chronicled the creation of the Commission as follows:
By concurrent resolution passed in 1979, the Legislature submitted to the people a proposed amendment to Article 6 of the Mississippi Constitution of 1890 by adding Section 177A, which was ratified by the electorate November 6, 1979, and thereafter became a part of our State Constitution.
Id. at 744. This Court heard no judicial-performance cases prior to the formation of the Commission. Then (as it does now), the Legislature had the power, "on the joint address of two-thirds of each branch of the legislature," to direct the governor to remove a judge. See Miss. Const. art. 4, § 53. Thus, we have dealt with these issues for only twenty-seven years, with the last three signaling our enhancing penalties when warranted. See Gordon, 955 So.2d at 306; Sanford, 941 So.2d at 218.
¶ 42. The majority cites Mississippi Commission on Judicial Performance v. Osborne, 977 So.2d 314 (Miss.2008). If Osborne proves anything, it reveals that this Court can and will enhance a sanction when we deem it appropriate. In Osborne, we doubled the recommended penalty. Id. at 316. Judge Osborne's conduct was in full view of the public, but is such visible conduct any more dangerous to true justice than backroom phone calls and conferences, and secret orders suspending citizens' rights without notice or hearing? Id. at 317. I suggest just the opposite. Considering the quantity, character, and consequences of Judge Bradford's misconduct, a more severe sanction is warranted.
CARLSON, P.J., JOINS THIS OPINION.
NOTES
[1] See Miss. Comm'n on Judicial Performance v. Warren, 791 So.2d 194 (Miss.2001); Miss. Comm'n on Judicial Performance v. Boykin, 763 So.2d 872 (Miss.2000); Miss. Comm'n on Judicial Performance v. Bowen, 662 So.2d 551 (Miss. 1995); Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387 (Miss. 1993).
[2] Miss. Comm'n on Judicial Performance v. Osborne, 977 So.2d 314 (Miss.2008); Miss. Comm'n on Judicial Performance v. Fowlkes, 967 So.2d 12 (Miss.2007); Gordon, 955 So.2d at 300; Sanford, 941 So.2d at 209; Miss. Comm'n on Judicial Performance v. Britton, 936 So.2d 898 (Miss.2006); Gibson, 883 So.2d at 1155.